IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 24-cv-01131-PAB-TPO

MATTHEW WINTER,

   Plaintiff,

v.

PLATTE VALLEY SCHOOL DISTRICT RE-7,

   Defendant.

---

**ORDER**

---

This matter comes before the Court on Platte Valley School District RE-7's Motion to Dismiss Amended Complaint [Docket No. 11]. Defendant Platte Valley School District RE-7 (the "District") moves under Federal Rule of Civil Procedure 12(b)(6) to dismiss the disability-discrimination claims brought against it under federal and Colorado law. Docket No. 11. Plaintiff Matthew Winter filed a response, Docket No. 15, and the District filed a reply. Docket No. 16. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

**I. BACKGROUND**[1]

Matthew Winter was an employee of the District, a school district in Weld County, Colorado from August 2021 until May 4, 2023. Docket No. 9 at 1-2, ¶¶ 1, 12. Mr. Winter worked as a technology aide. *Id.* at 2, ¶ 15. This role involved duties such as

---

[1] The following facts are taken from Mr. Winter's amended complaint, Docket No. 9, and are presumed true for the purpose of ruling on the District's motion to dismiss.

assessing computers and documenting service needs via a ticketing system, solving printer issues, fixing student and teacher laptops, and cleaning machines.  *Id.* at 4-5, ¶¶ 30-31, 43, 45-46, 48.

At the beginning of his employment, Mr. Winter made his supervisor, Mike Jakel, aware of his disabilities and asked for accommodations.  *Id.* at 3, ¶ 17.  Mr. Winter's disabilities include "major depression, complex PTSD, epilepsy, and bipolar disorder."  *Id.* at 7, ¶ 62.  These conditions substantially limit Mr. Winter in one or more major life activities.  *Id.*  Due to his disabilities, Mr. Winter has difficulty remembering things and has trouble with tasks that have a sequence unless he has written instructions to help him remember.  *Id.* at 1, ¶ 3.  Mr. Winter requested that Mr. Jakel provide him with accommodations for his disabilities, including a "blue screen shield," noise-cancelling headphones, and written instructions for procedures with multiple steps.  *Id.* at 2, ¶¶ 4-5.  Mr. Jakel responded, apparently mockingly, by asking "[c]an you lift 80 pounds?"  *Id.* at 3, ¶ 20.  In response to request for written instructions, Mr. Jakel told Mr. Winter that he "he did not have time to write things down for [Mr. Winter] and [Mr. Winter] needed to 'figure it out.'"  *Id.*, ¶¶ 22-23.  Mr. Winter alleges that his accommodation requests were "ignored," *id.* at 2, ¶ 6, or "brushed off and not met."  *Id.* at 3, ¶ 19.

Mr. Jakel would state to Mr. Winter that he was tired of the "way you note things" in the ticketing system.  *Id.* at 4, ¶ 28.  Mr. Jakel first stated that Mr. Winter's tickets did not contain enough information.  *Id.*, ¶ 30.  Later, Mr. Jakel said, in one meeting, that the tickets contained too much information.  *Id.*, ¶ 33.  These ticket-writing issues were not, however, mentioned in Mr. Winter's single performance review.  *Id.*, ¶ 29.  On one

2

occasion, Mr. Jakel embarrassed Mr. Winter by making him follow up with a student for more information on a technical issue.  *Id.*, ¶ 34.

Mr. Winter's colleagues unlocked his office door and intruded on Mr. Winter's mental health treatment sessions.  *Id.* at 4-5, ¶¶ 36-38.  Mr. Winter never saw anyone interrupt the meetings of his colleagues.  *Id.* at 5, ¶ 39.  Mr. Winter's colleagues were unfriendly to him and greeted him in a different manner than they did other people.  *Id.*, ¶ 40.  Mr. Winter did not receive recognition for his good ideas, while his colleagues received recognition for their good ideas.  *Id.*, ¶¶ 41-44.

On May 4, 2023, Mr. Winter met with Mr. Jakel and Dr. Jeremy Burmeister, the District's superintendent.  *Id.* at 6, ¶ 49.  At that meeting, Mr. Winter was informed that his contract would not be renewed at the end of the school year, and that Mr. Winter could either resign or be terminated at the end of May.  *Id.*, ¶¶ 51-52.  Mr. Jakel said that the District was terminating Mr. Winter because Mr. Jakel was "tired of how your tickets are."  *Id.*, ¶ 52.  Mr. Winter initially said he would stay until the end of May, but then said that he wanted to think about his decision.  *Id.*, ¶ 53.  On May 7, 2023, Mr. Winter decided that he would not stay until the end of May.  *Id.*, ¶ 54.

Mr. Winter filed an administrative discrimination charge on August 8, 2023 and received a right-to-sue notice on February 14, 2024.  *Id.*, ¶¶ 57-58.  Mr. Winter filed the present action in state court on March 28, 2024.  Docket No. 1-2 at 1.  The District filed a notice of removal with this Court on April 23, 2024.  Docket No. 1.  Mr. Winter filed an amended complaint, which is the subject of the District's motion to dismiss, on April 29, 2024.  Docket No. 9.

## II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The 'plausibility' standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible." *RE/MAX, LLC v. Quicken Loans Inc.*, 295 F. Supp. 3d 1163, 1168 (D. Colo. 2018) (citing *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008)). Generally, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555) (alterations omitted). A court, however, does not need to accept conclusory allegations. *See, e.g.*, *Hackford v. Babbit*, 14 F.3d 1457, 1465 (10th Cir. 1994) ("[W]e are not bound by conclusory allegations, unwarranted inferences, or legal conclusions.").

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quotations and alterations omitted); *see also Khalik*, 671 F.3d at 1190 ("A plaintiff must nudge [his] claims across the line from conceivable to plausible in order to survive a motion to dismiss." (quoting *Twombly*, 550 U.S. at 570)). If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then plaintiff has not stated a plausible claim. *Khalik*, 671 F.3d at 1191 (quotations omitted). Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still

4

must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson*, 534 F.3d at 1286 (alterations omitted).

## III. ANALYSIS

The District seeks to dismiss Mr. Winter's claims for discrimination on the basis of disability under the Americans with Disabilities Act ("ADA") and for discrimination on the basis of disability under the Colorado Anti-Discrimination Act ("CADA"). Docket No. 11 at 1.

### A. <u>The Nature of Mr. Winter's Claim</u>

The Court must first determine what claim or claims Mr. Winter brings in this case. Mr. Winter captions his first count "Discrimination on the Basis of Disability-CADA," Docket No. 9 at 6, and his second count "Discrimination on the Basis of Disability-ADA." *Id.* at 8. Mr. Winter also mentions at several points in his complaint that the District did not grant his accommodation requests. *See, e.g.*, *id.*, ¶ 77.[2]

The elements of an ADA discrimination claim are 1) the plaintiff was a disabled person within the meaning of the ADA, 2) the plaintiff was qualified, with or without reasonable accommodation, to perform the essential functions of his job, and 3) the plaintiff was discriminated against because of his disability. *Herrmann v. Salt Lake City Corp.*, 21 F.4th 666, 678 (10th Cir. 2021); *Aubrey v. Koppes*, 975 F.3d 995, 1014 (10th Cir. 2020). The elements of a failure-to-accommodate claim are 1) the plaintiff was a disabled person within the meaning of the ADA, 2) the plaintiff was qualified, with or

---

[2] The amended complaint states that Mr. Winter "brings claims for . . . retaliation in violation of ADA and CADA." Docket No. 9 at 2, ¶ 10. While Mr. Winter's original complaint, Docket No. 3, included retaliation claims, *id.* at 8, 10-11, the amended complaint does not.

without reasonable accommodation, to perform the essential functions of his job, 3) the plaintiff requested a plausibly reasonable accommodation, and 4) the defendant refused to accommodate his disability. *Aubrey*, 975 F.3d at 1006.

The Court finds that Mr. Winter alleges discrimination claims based on the captions to his two counts. *See* Docket No. 9 at 6, 9. The Court also finds that Mr. Winter alleges failure-to-accommodate claims. Although Mr. Winter does not caption a section of the complaint with this claim, he alleges that he was disabled, Docket No. 9 at 8, ¶ 75, that he was otherwise qualified, *id.*, ¶ 76, that he requested accommodations, *id.* at 3, ¶¶ 17, 22, and that the accommodation request was denied. *Id.*, ¶¶ 20, 23. Moreover, the District appears to agree that Mr. Winter's complaint attempts to allege a failure-to-accommodate claim. Docket No. 11 at 12-15; Docket No. 16 at 8-9.

### B. ADA Discrimination Claim

When a plaintiff does not present direct evidence of discrimination,[3] a court looks to the burden-shifting framework from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to evaluate disability discrimination claims arising under the ADA. *See Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1192 (10th Cir. 2018) (applying framework to an ADA

---

[3] Mr. Winter's response argues that he can prevail under either a direct or indirect theory of discrimination. Docket No. 15 at 1, 5-7. Direct evidence of discriminatory animus shows that a plaintiff "was terminated because of [his] disability." *Herrmann*, 21 F.4th at 679. Cases where plaintiffs have successfully brought direct discrimination claims generally involve either a facially discriminatory policy or an employer making an express statement that the employee's disability is the basis for an adverse employment action. *Id.* at 678-79 (collecting cases). Mr. Winter has not alleged that the District had any facially discriminatory policy. He has not alleged any express statements by his supervisors or co-workers about his disability other than the vague allegation that "[i]n the course of his employment . . . Mr. Winter has been subjected to demeaning comments related to his disability." Docket No. 9 at 2, ¶ 16. Nor does he allege that the District cited his disability as the reason for terminating him. As such, the Court finds that Mr. Winter has not pled a case of direct discrimination.

claim).  The full framework only applies at the summary judgment stage.  *See McNellis v. Douglas Cnty. Sch. Dist.*, 116 F.4th 1122, 1137-38 (10th Cir. 2024); *Barrett v. Salt Lake Cnty.*, 754 F.3d 864, 867 (10th Cir. 2014).  But the Court still begins at the first step of the *McDonnell Douglas* framework – analyzing the prima facie elements of a discrimination claim – because, "[w]hile the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in [his] complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim." *Khalik*, 671 F.3d at 1192 (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002)).

For an ADA claim brought under an indirect theory of discrimination, Mr. Winter must allege that he is a disabled person as defined by the ADA, that he was qualified, with or without reasonable accommodation, to perform the essential functions of his job, and that he suffered an adverse employment action because of his disability.  *Aubrey*, 975 F.3d at 1014.[4]  First, the District argues that Mr. Winter's claim should be dismissed because Mr. Winter fails to adequately plead that he is a person with a disability as defined by the ADA.  Docket No. 11 at 7-8.  Second, the District asserts that Mr. Winter does not plead facts to show that he suffered an adverse employment action either through constructive discharge or through a hostile work environment.  *Id.* at 8-11.  Third, the District argues that, even if Mr. Winter has pled a prima facie discrimination case, the District has a legitimate, nondiscriminatory reason for its action under the *McDonnell Douglas* burden-shifting framework.  *Id.* at 11-12.  The Court will address the

---

[4] Neither side addresses the question of whether Mr. Winter was qualified to perform the essential functions of his job.  As a result, the Court will not address this element.

7

first two arguments. The Court will not address the District's argument regarding the legitimate, nondiscriminatory reason for its action because that step of the *McDonnell Douglas* burden-shifting framework does not apply at the motion-to-dismiss stage. *See McNellis*, 116 F.4th at 1137-38; *Barrett*, 754 F.3d at 867.

### 1. Person with a Disability Recognized by the ADA

The District argues that Mr. Winter has not properly alleged that he falls within the ADA's definition of a person with a disability. Docket No. 11 at 7-8. Specifically, the District argues that Mr. Winter "does not allege what major life activity or activities are impacted by his alleged disabilities, or to what extent." *Id.* at 7. The District further claims that, while Mr. Winter did state that his disability limits him in essential functions because of his trouble with remembering things, "he does not connect the job functions with a major life activity, and does not explain how the requested accommodations are necessary to perform an essential job function." *Id.* The District argues that two of the accommodations Mr. Winter allegedly asked for – a blue screen shield and noise-cancelling headphones – seem unrelated to Mr. Winter's alleged difficulties with remembering tasks and following sequences. *Id.* at 7-8.

For this element, a plaintiff must state facts suggesting he is disabled within the meaning of the ADA. *Johnston v. Hunter Douglas Window Fashions, Inc.*, 715 F. App'x 827, 830 (10th Cir. 2017) (unpublished). The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). The law defines "major life activities" as including, but not limited to, "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing,

8

learning, reading, concentrating, thinking, communicating, and working." *Id.* § 12102(2)(A). Both the amended complaint and the parties' motions suggest that the only question here is whether Mr. Winter falls within the statute's first definition of "disability." *See, e.g.*, Docket No. 9 at 7, ¶ 62; Docket No. 11 at 7-8.

To plead a claim under the first definition – "actual impairment" – Mr. Winter must 1) assert that he has a recognized impairment; 2) identify one or more appropriate major life activities; and 3) allege that the impairment substantially limits one or more of those activities. *See Felkins v. City of Lakewood*, 774 F.3d 647, 650 (10th Cir. 2014) (citing *Carter v. Pathfinder Energy Servs., Inc.*, 662 F.3d 1134, 1142 (10th Cir. 2011)). Mr. Winter does not, however, have to provide a "precise" description of how the impairment impacts the major life activity. *See Grote v. Beaver Express Serv.*, LLC, 2013 WL 4402822, at *6 (D. Kan. Aug. 15, 2013) (citing *Allen v. SouthCrest Hosp.*, 455 F. App'x 827, 832 n.5 (10th Cir. 2011) (unpublished)).

The Court finds that Mr. Winter has satisfied the requirement to allege a recognized impairment by pleading that he suffers from "major depression, complex PTSD, epilepsy, and bipolar disorder." Docket No. 9 at 7, ¶ 62; *see also* 29 C.F.R. § 1630.2(j)(3)(iii) (discussing recognized ADA impairments including major depressive disorder, post-traumatic stress disorder, epilepsy, and bipolar disorder).

For the second and third prongs, the Court finds that Mr. Winter has satisfied the requirement to allege one or more major life activities that his disability substantially limited. Mr. Winter alleges that he "has difficulty remembering things[ ] and has trouble doing tasks that have a sequence." Docket No. 9 at 1, ¶ 3. He alleges that when he "began having trouble remembering the order of operations, he asked Mr. Jakel if he

could write directions down and to have patience with him while completing tasks." *Id.* at 3, ¶ 22.  In his response to the District's motion to dismiss, Mr. Winter seems to imply that his impairments limit the major life activity of "working."  Docket No. 15 at 6.  The District argues that the holding of *Allen*, 455 F. App'x at 833-835, defines a "working" impairment as one that would keep Mr. Winter from performing a broad class of jobs. Docket No. 16 at 2-3.  The District states that Mr. Winter has not alleged such a limitation.  *Id.*  But, although Mr. Winter did not make such an allegation explicit, most, if not all, modern jobs require an ability to perform tasks that have a sequence to them. The Court finds that Mr. Winter's allegations here plausibly allege that he suffers the kind of impairment that would limit his ability to perform a broad class of jobs.

Moreover, the complaint plausibly alleges impairment of at least two other major life activities listed in 42 U.S.C. § 12102(2)(A): concentrating and thinking.  Docket No. 9 at 3, ¶ 18 ("[Mr. Winter] has difficulty remembering things[ ] and has trouble doing tasks that have a sequence.").  Mr. Winter does not have to provide a "precise" description of his impairments' impact on his major life activities.  *See Allen*, 455 F. App'x at 832 n.5. Here, he alleges how his impairments limit his ability to handle sequence-based tasks, Docket No. 9 at 3, ¶ 18, and has identified various job duties he had, such as computer maintenance and repair, *see, e.g.*, *id.* at 5, ¶ 48, that are obviously sequence-based. The Court therefore finds that Mr. Winter has adequately pled that he is a person with a disability covered by the ADA.

### 2. Adverse Employment Action

Mr. Winter must allege that he suffered an adverse employment action because of his disability.  *Aubrey*, 975 F.3d at 1014.  The District argues that Mr. Winter did not suffer an adverse employment action.  The District identifies two possible theories of an

adverse employment action – hostile work environment and constructive discharge – and argues that Mr. Winter has not alleged sufficient facts to support either theory. Docket No. 11 at 8-11.  The Court finds that neither side addresses the because-of-his-disability portion of the element.  As a result, the Court will address only the adverse-employment-action part of the element.

### a. Hostile Work Environment

The District argues that Mr. Winter was not subjected to a hostile work environment and that allegations of co-workers and supervisors being unfriendly, unhelpful, and inconsiderate do not rise to the legal standard of a hostile work environment.  Docket No. 11 at 8-10.  Mr. Winter's response does not address this argument.  The Court agrees with the District that, to the extent that the complaint discusses this issue, *see* Docket No. 9 at 2, 5, ¶¶ 16, 40-44, the facts alleged do not suggest that the work environment was one "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or persuasive to alter the conditions of the victim's employment and create an abusive working environment."  *Williams v. FedEx Corp. Servs.*, 849 F.3d 889, 897 (10th Cir. 2017) (quoting *Penry v. Fed. Home Loan Bank of Topeka*, 155 F.3d 1257, 1261 (10th Cir. 1998)).

### b. Constructive Discharge

The District argues that Mr. Winter was not constructively discharged because he voluntarily resigned and because he failed to show that it would have been intolerable to remain employed.  Docket No. 11 at 10-11.  When an employee faces a choice solely between voluntary resignation and certain termination, that employee has been constructively discharged.  *Burks v. Oklahoma Publ'g Co.*, 81 F.3d 975, 978 (10th Cir. 1996) ("an employee can prove a constructive discharge by showing that she was faced

11

with a choice between resigning or being fired"). Mr. Winter's amended complaint alleges that his supervisor told him that the District would not be renewing Mr. Winter's contract and that "[w]e'll give you two options: you can resign today, or we'll do it at the end of May." Docket No. 9 at 6, ¶¶ 51-52. Mr. Winter therefore faced the choice of either voluntary resignation or certain termination. Thus, under *Burks*, Mr. Winter has properly alleged constructive discharge.

The District also argues that, even if Mr. Winter does allege constructive discharge, his claim should be dismissed because he has failed to allege a continued right to employment. *Id.* at 11. A continued right to employment is not, however, an element of a constructive discharge claim. *See Green v. Brennan*, 578 U.S. 547, 555 (2016) ("A claim of constructive discharge therefore has two basic elements. A plaintiff must prove first that he was discriminated against by his employer to the point where a reasonable person in his position would have felt compelled to resign. . . . [Second] he must also show that he actually resigned."). The Court therefore rejects the District's argument and will deny the District's motion to dismiss plaintiff's ADA discrimination claim.

### C. ADA Failure-to-Accommodate Claim

For a failure-to-accommodate claim, Mr. Winter must allege 1) he was disabled within the meaning of the ADA, 2) he was otherwise qualified for his job, 3) he requested a plausibly reasonable accommodation, and 4) the District refused to accommodate his disability. *See Aubrey*, 975 F.3d at 1006. The Tenth Circuit has explained that "[e]stablishing a prima facie claim is not onerous." *Id.* (citing *Osborne v. Baxter Healthcare Corp.*, 798 F.3d 1260, 1266 (10th Cir. 2015)).

12

The Court has already found that Mr. Winter alleged that he was disabled and that neither side addressed the "otherwise qualified element." The District does not argue that it provided Mr. Winter with an accommodation so the Court will address only whether Mr. Winter alleged that he requested a plausibly reasonable accommodation.

The ADA explains that

> [A] "reasonable accommodation" may include – (A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and (B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C. § 12111(9). Inherent in the reasonable accommodation requirement is an obligation for the employer and employee to engage in an interactive process. *Aubrey*, 975 F.3d at 1007. The point of the dialogue is to determine the scope of the employee's disability and whether there is a reasonable accommodation that would permit the disabled employee to perform the essential functions of the job. *Id.* The interactive process begins when an employer provides notice to his employer of his disability and associated limitations. *Dansie v. Union Pac. R.R. Co.*, 42 F.4th 1184, 1193 (10th Cir. 2022).

While there are no magic words that an employee must use, any request for accommodation must be "sufficiently direct and specific, giving notice that [the employee] needs a special accommodation. *Foster v. Mountain Coal Co., LLC*, 830 F.3d 1178, 1188 (10th Cir. 2016) (citation omitted). In *Foster*, the Tenth Circuit held that the plaintiff's statement to managers that "I've got surgery scheduled – going to see the doctor [ ] and schedule surgery for Friday," *id.* at 1182, could constitute a sufficient

13

request for accommodation even though the employee did not specifically say he was seeking an accommodation.  *Id.* at 1188-89.

Here, Mr. Winter alleges that he suffers from "major depression, complex PTSD, and bipolar disorder."  Docket No. 9 at 8, ¶ 75.  He alleges that, because of these disabilities, he "has difficulty remembering things, and has trouble doing tasks that have a sequence, without written instructions to help him remember."  *Id.* at 3, ¶ 18.  He claims that he informed his supervisor, Mr. Jakel, of his disabilities and asked for "necessary accommodations," *id.*, ¶ 17, including "purchasing a blue screen shield, noise cancelling headphones and written instructions."  *Id*. at 8, ¶ 77.  Mr. Winter does not allege why he requested a blue screen shield and noise-cancelling headphones as necessary accommodations to address memory issues and sequencing issues.  However, he does allege that, when he "began having trouble remembering the order of operations, he asked Mr. Jakel if he could write directions down and have patience with him while completing tasks."  *Id.* at 3, ¶ 22.  Mr. Winter alleges that he received two responses from Mr. Jakel regarding his accommodation requests: once, Mr. Jakel responded "[c]an you lift 80 pounds?" and the other time Mr. Jakel stated that "he did not have time to write things down for [Mr. Winter] and [Mr. Winter] needed to 'figure it out.'"  *Id.*, ¶¶ 20, 23.  Based on these allegations, the Court finds that Mr. Winter has properly alleged that he requested the accommodation of having his supervisor write things down for him.

Mr. Winter must also allege that the requested accommodation was reasonable.  *Aubrey*, 975 F.3d at 1006.  Whether an accommodation is reasonable turns on "the facts of each case taking into consideration the particular individual's disability and

14

employment position." *Punt v. Kelly Servs.*, 862 F.3d 1040, 1050 (10th Cir. 2017). "A proposed accommodation is not reasonable on its face if it would not enable the employee to perform the essential function at issue." *Osborne*, 798 F.3d at 1267 (citation omitted). While the Court finds that Mr. Winter fails to sufficiently allege the reasonableness of the blue screen shield and the noise-cancelling headphones, the Court finds that Mr. Winter has sufficiently alleged why written instructions would help him perform the essential functions of his job. The Court also finds this request to be reasonable. Mr. Winter alleges that he has difficulty with sequence-based tasks and that his job involved such tasks. Docket No. 9 at 3, ¶ 18. Moreover, the difficulty and cost of providing the requested accommodation – writing down instructions – appears relatively low. Therefore, the Court finds that Mr. Winter has properly alleged that he requested a reasonable accommodation. The Court will deny the District's motion to dismiss plaintiff's ADA failure-to-accommodate claim.

### D. CADA Claims

Mr. Winter brings claims for disability discrimination and failure-to-accommodate under the Colorado Anti-Discrimination Act, Colo. Rev. Stat. § 24-34-402. Docket No. 9 at 6-8, ¶¶ 60-72. Colorado state employment discrimination claims are analyzed under the same standards as federal law. *Colo. C.R. Comm'n v. Big O Tires, Inc.*, 940 P.2d 397, 399-400 (Colo. 1997); *Johnson v. Weld Cnty.*, 594 F.3d 1202, 1219 (10th Cir. 2010) (noting, in the context of a disability discrimination claim, that Colorado and federal law apply the same standards). The Court has already found that Mr. Winter has stated plausible claims under federal law; therefore, the Court finds that Mr. Winter has stated the analogous claims under Colorado law. The Court will deny the District's motion to dismiss plaintiff's disability discrimination and failure-to-accommodate claims.

15

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Platte Valley School District RE-7's Motion to Dismiss Amended Complaint [Docket No. 11] is **DENIED.**

DATED March 20, 2025.

                           BY THE COURT:

                           PHILIP A. BRIMMER
                           Chief United States District Judge